UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LENORA LUTZ,

    Plaintiff,

    v.

OHIO DEPARTMENT OF
REHABILITATION AND CORRECTION,
NOBLE CORRECTIONAL INSTITUTION,

    Defendant.

Case No.: 2:10-cv-877
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 39), Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment (ECF No. 40), Defendants' Reply in Support of Summary Judgment (ECF No. 41), and the Affidavit of Albert Jackson (ECF No. 42). For the reasons that follow, the Court **GRANTS** Defendants' motion.

**I. Background**

Plaintiff Lenora Lutz brought this action against her former employer, Noble Correctional Institution ("Noble"), claiming that Noble discriminated against her and retaliated against her, both in violation of 42 U.S.C. § 2000e *et seq*. ("Title VII").

Noble is a medium security prison within the Ohio Department of Rehabilitation and Corrections ("ODRC"). It houses inmates convicted of all criminal offenses, including murder. Plaintiff began working at Noble in January 2001, as a corrections officer. She worked as a

1

relief officer and then bid into an inmate housing unit.

During her employment, Plaintiff began to have serious right arm and hand problems, causing her to wear a brace to help with numbness. Ultimately, Plaintiff claims that she lost complete use of her right hand. Plaintiff also began suffering from incapacitating headaches, which effected her concentration, caused her to have blurred vision and to be unable to read. She experiences dizzy spells every other day and once fell down stairs, breaking her leg, due to a dizzy spell. Plaintiff's doctors do not know the cause of her hand problems and headaches.

Plaintiff's health conditions rendered her unable to perform her full duties as a corrections officer, and as a result, she participated in ODRC's Return to Work ("RTW") program. The RTW program is governed by a "departmental policy that provides for a joint labor [and] management group to individually on a case-by-case basis assess a staff member's current physical limitations due to some temporary disability and what, if any, duties they can perform during their rehabilitation period." (ECF No. 39-3; Warden Aff.) The program is designed to be temporary, offering accommodation for no more than 90 days. It is utilized to transition an employee back to full duty with no medical restrictions. Once employees exhaust their RTW time, they go back to their regular post if they are physically able to do so. If the employee is not able to return to their regular post, he or she must use disability leave. For 90 days, Plaintiff was temporarily placed on posts where she had limited contact with inmates due to her physical limitations and her inability to defend herself. Plaintiff's health did not improve during those 90 days and she was not able to return to full duty. Thereafter, she went on disability leave and began receiving benefits.

On May 20, 2009, while still on disability leave, Plaintiff requested that she be

permanently assigned to a post that has limited contact or no contact with inmates, as she could not physically defend herself or others, nor use a firearm.  Further, Plaintiff believed that she could not wear her wrist brace in an inmate housing unit, as it would alert the inmates that she was physically vulnerable.

Defendants denied Plaintiff's request to be assigned permanently to a limited or non-contact position and ultimately terminated Plaintiff.  Plaintiff claims that she was not given a permanent limited contact or non-contact position because she is a woman.  Further, Plaintiff contends that she was terminated in retaliation for filing a charge of discrimination against Defendants.

## II.  Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III. Discussion

To establish a Title VII employment discrimination or retaliation claim, a plaintiff is "required to either 'present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment.' " *Id.* at 272-73 (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)). Where, as here, a plaintiff fails to present direct evidence of discrimination or retaliation, the burden shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), applies. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (discrimination); *Weigel v. Baptist Hosp.*, 302 F.3d 367, 381 (6th Cir. 2002) (retaliation). Under that paradigm, a plaintiff must first present a *prima facie* case of discrimination or retaliation. "Once the *prima facie* case is made, a defendant may offer

4

any legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut by evidence of pretext; however, the burden of proof always remains with the plaintiff." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

## A. Discrimination

Plaintiff contends that Defendants refused to place her into a limited contact on non-contact position because she is a woman.

### 1. *Prima facie* case of discrimination

"To establish a *prima facie* case of discrimination by the defendant, 'the plaintiff must show (1) that [s]he is a member of a protected group, (2) that [s]he was subject to an adverse employment decision, (3) that [s]he was qualified for the position, and (4) that [s]he was replaced by a person outside of the protected class. . . . the fourth element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably.'" *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)) (alteration in original). The parties here only dispute whether there were any similarly situated non-protected employees who were treated more favorably than Plaintiff.

Plaintiff posits that her male coworker, Albert Jackson, is similarly situated to her as that term is defined under a Title VII analysis. Plaintiff submitted with her memorandum in opposition, Jackson's affidavit. Jackson's affidavit, however, is unsigned and unauthenticated. In Defendants' reply memorandum, Defendants point this out and ask the Court not to consider the affidavit. In the alternative, Defendants argue that, even if this Court were to accept the

5

affidavit, it is irrelevant because Jackson is not similarly situated to Plaintiff.

Four days after Defendants' reply memorandum was filed, and three weeks after Plaintiff had filed her memorandum in opposition to Defendants' motion, Plaintiff re-filed Jackson's affidavit. Jackson's affidavit at this filing was signed and authenticated. Plaintiff indicated that, prior to filing her memorandum in opposition, her attorney "obtained Jackson's oral approval of the wording of the" affidavit and the "[p]roblems in transmission of the signed and notarized affidavit to [Plaintiff's counsel] caused a delay in submitting this fully executed affidavit to the Court." (ECF No. 42 at 1.) Plaintiff further indicated that because Defendants addressed the substance of the unsigned affidavit, Defendant is not prejudiced and it is appropriate for the Court to consider the untimely filed affidavit.

Initially, the Court notes that it disagrees with Plaintiff's proposition that because Defendants addressed the merits of the unsigned affidavit it is appropriate for the Court to consider it. This Court's Local Civil Rules do not permit this type of late filing of evidence to support a memorandum in opposition to a dispositive motion. Local Rule 7.2 provides:

> When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and *submitted no later than, the primary memorandum* of the party relying upon such evidence. . . . If evidence is not available to meet this schedule, or circumstances exist as addressed by Fed. R. Civ. P. 56(f), counsel shall consult one another and attempt to stipulate to an agreed Motion for extension of the schedule established by this Rule; failing agreement, counsel shall promptly bring the matter to the attention of the Court in order to avoid piecemeal submission of evidence and unnecessary memoranda.

S. D. Ohio Civ. R. 7.2(d) (emphasis added). In turn, previous Federal Rule of Civil Procedure 56(f), now 56(d)[1], provides:

---

[1] The 2010 Amendments to the Federal Rules of Civil Procedure indicates that "Subdivision (d) carries forward without substantial change the provisions of former subdivision

6

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Plaintiff did not appropriately bring to the Court's attention the matter of the unavailability of an admissible affidavit as required by the Local Rules and Rule 56(d) of the Federal Rules. Plaintiff failed to file an affidavit or declaration and instead simply filed without explanation Jackson's unsigned and unauthenticated affidavit. Thus, Jackson's affidavit is not properly considered by this Court. That being said, even if this Court were to consider the affidavit, it is of no help to Plaintiff because Jackson is not similarly situated to Plaintiff.

To satisfy the similarly situated requirement of a gender discrimination *prima facie* showing, a plaintiff must demonstrate that the comparable employee is similar "in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). In determining what the "relevant" aspects are, courts are to "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the comparator employee." *Id.* To make this assessment, courts look to certain factors, such as whether the individuals have dealt with the same supervisor, have been subject to the same standards, and "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employers treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

---

(f)."

Jackson's affidavit provides in its entirety:

1. I make all of the statements contained in the affidavit based on my own personal knowledge.

2. I am a male corrections officer ("C.O.") working at the Noble Correctional Institution ("NCI"). Since early 2007, I have been under a physician's restriction for conditions that limit the use of my right arm. Those conditions are related to my right wrist and right elbow.

3. I believe that because of my right arm problems I am not able to pass the unarmed self-defense tests as fully administered to C.O.s by the Ohio Department of Rehabilitation and Correction ("ODRC"). I have been advised to "sit on the sidelines" while the full tests are administered. I have been assigned to a full duty post at NCI notwithstanding my physical limitations and the restrictions imposed by my physician.

(ECF No. 42.)

For several reasons, the Court concludes that Jackson is not similarly situated to Plaintiff in the relevant aspects of their employment. First, during his tenure at Noble, Jackson has been and is currently assigned to a full duty post that requires regular inmate contact. Plaintiff has not consistently worked at posts requiring regular inmate contact. Plaintiff, by her own admission, currently cannot work in positions that require regular inmate contact. Plaintiff filed a final request for accommodation, asking to be placed indefinitely in a position that had limited or no contact with inmates:

> Please describe in your own words your disability and specifically what functions of your position you cannot perform without an accommodation:
>
> > Loss of use of right hand. Pain in hand/wrist - joint pain and swelling - numbness and tingling. I am right handed and would not be able to defend myself or others due to condition. Nor can I do firearms/self defense.
>
> What specific accommodations are you requesting?
>
> > To be put on limited to no contact position until such time that I can

8

> be medically released back to full duty which is unknown at this time.
> I have been to several specialists with no resolve as to my condition.

(ECF No. 39-5) (emphases in original). Plaintiff is not currently released by her physician to work in a position that requires inmate contact.

Second, while Jackson attests that he has conditions that limit his use of his right arm, there is no evidence in the record to support the inference that his medical condition is as severe as Plaintiff's; indeed, the opposite. In addition to Plaintiff's description cited above of her injury as a total loss of use of her right hand, Plaintiff testified that she has difficulty engaging in daily living tasks with her right hand such as bathing, cleaning the house and turning keys. She has difficulty gripping a pen to write her name. She recently started having problems with her left hand as well. Plaintiff also suffers from incapacitating headaches. These headaches affect her concentration and cause her to have blurred vision. She experiences dizzy spells every other day and once fell down stairs, breaking her leg, due to a dizzy spell. She cannot read when she has a headache and has trouble concentrating.

Third, there is no evidence before the Court showing the history of ODRC's accommodation, if any, of Jackson. Nor any evidence to show that Jackson, after such accommodations, was still not released by his treating physician to return to his full duty position as a corrections officer. However, ODRC has a long history of following its policies in accommodating Plaintiff, for example placing her in the RTW program for 90 days. Further, unlike Jackson, Plaintiff has not been released by her treating physician to return to her full duty position.

Last, despite his stated belief to the contrary, Jackson has passed the unarmed self-defense test the last four years. Apparently, Jackson believes there is a "full test" that he

9

could not pass. However, the uncontroverted evidence shows that he took the unarmed self-defense tests given to corrections officers at Noble and passed those tests. Defendants submit as evidence the actual tests from Jackson's file showing that he passed the test required for a corrections officer at Noble. (ECF No. 39-13.) Plaintiff readily admits that she cannot pass the unarmed self-defense test and admits she could not defend herself or others should inmates attack.

Therefore, even when viewing all of the evidence before the Court in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court concludes that Plaintiff has failed to establish a *prima facie* case of gender discrimination. Plaintiff, anticipating this conclusion, argues that,"at the *prima facie* case stage, [the Court] cannot consider any evidence presented by ODRC. This Court should not conflate the *prima facie* case and pretext phases of the *McDonnell Douglas* paradigm." (ECF No. 40 at 3) (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651 (6th Cir. 2000)). Plaintiff, however, is mistaken in her analysis. *Cline*, upon which Plaintiff relies, does not stand for the proposition that a district court cannot consider a movant's evidence at the *prima facie* stage. Instead, the *Cline* court explained that the district court in that case "conflated the distinct stages of the *McDonnell Douglas* inquiry by using [the defendant's] 'nondiscriminatory reason' as a predicate for finding Cline to have failed to make a *prima facie* case." *Cline*, 206 F.3d at 660. This Court is not considering Defendants' legitimate nondiscriminatory reason for not placing Plaintiff in a limited contact position as a predicate for finding that Plaintiff has failed to make out a *prima facie* case. The Court is evaluating the evidence before it to determine whether Plaintiff's offered comparator, *i.e.*, Albert Jackson, is similarly situated to Plaintiff.

10

Based on the foregoing, the Court concludes that Plaintiff has failed to establish a *prima facie* case of gender discrimination.

### 2. Defendants' legitimate nondiscriminatory reason

Even if Plaintiff had established a *prima facie* case of discrimination, Defendant has met its burden of producing a legitimate nondiscriminatory reason for not placing Plaintiff in a limited contact position. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (a defendant need only articulate a nondiscriminatory rationale; it need not prove it). Indeed, Defendant offers two reasons: First, Plaintiff was unable to fill any corrections officer position at Noble because even the limited contact positions require some contact with inmates, even if it is just walking through the prison yard to arrive at the job location, and because Plaintiff could not pass the unarmed self-defense test. Second, even if Plaintiff were qualified to fill a limited contact position, placing her in such a position without going through the required bidding process would violate the "pick-a-post" agreement to which Plaintiff is subject. The pick-a-post agreement is an agreement between Noble and the union, of which corrections officers are members, which assigns posts through a bidding process based on employee seniority. Defendants maintain that bypassing the pick-a-post agreement to place Plaintiff indefinitely in a limited contact post, without consideration of her relative seniority, would violate that agreement.

### 3. Pretext

Because Defendants have offered legitimate nondiscriminatory reasons for the adverse employment action, the burden shifts back to Plaintiff, who must demonstrate that Defendants' explanations for denying Plaintiff's requested accommodation are a pretext for discrimination. *See Hicks*, 509 U.S. at 507. In order to do so, Plaintiff must produce sufficient evidence from

11

which the jury could "reasonably reject [the defendants'] explanation" and infer that the defendants "intentionally discriminated" against her. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 246-47 (6th Cir. 1997) ("because 'it is not enough . . . to disbelieve the employer['s proffered nondiscriminatory reasons]; the factfinder must believe the plaintiff's explanation of intentional discrimination.' ") (quoting *Hicks*, 509 U.S. at 519)). Plaintiff must show that Defendants' proffered reason had no basis in fact, did not actually motivate their challenged conduct, or was insufficient to motivate their challenged conduct. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Here, Plaintiff requested to be placed in a limited or non-contact position indefinitely. A committee at ODRC's central office, in Columbus, Ohio, reviewed the request. The committee, comprised of three women, denied Plaintiff's request based on the information gleaned from an interview with Plaintiff and a review of the medical documentation provided by Plaintiff. The committee issued a written memorandum to the warden of Noble indicating that it recommended denying Plaintiff's accommodation request. The memorandum stated, *inter alia*:

> [The disability Worksite Coordinator] did not support [Plaintiff]'s request due to [Plaintiff]'s inability to perform the essential functions of her job of a correction officer. All custody staff must be able to respond to mandowns and be certified in unarmed self-defense and firearms. Additionally, it is not possible to place [Plaintiff] in a limited contact post for an unknown duration due to the pick-a-post agreement between the union and the institution and there is no such position as a "no contact" post at [Noble]. All employees at [Noble] have some form of contact with inmates while working at the institution.

(ECF No. 39-7.) The committee also recommended that Noble pursue disability separation for Plaintiff, which the warden did pursue. Plaintiff was ultimately "disability separated." Plaintiff did not appeal this decision, nor has she requested reinstatement, which she is entitled to do once her medical condition improves.

12

Plaintiff argues that:

> The accommodation committee's unequivocal assertion that "non-contact" positions did not exist at NCI reflects either a lack of investigation into the "particularized facts" existing at NCI, or a conscious disregard for the documentation that contradicted that statement. In either event, the evidence in the record now before this Court permits a jury to conclude that the accommodation committee did not hold the requisite "honest belief" in the validity of its articulation that "non-contact" posts did not exist at NCI.

(ECF No. 40 at 7.) Plaintiff's argument is not well taken.

Initially, the Court notes that the accommodation committee did not solely rely on the fact that there were no "non-contact" posts. Instead, the committee's memorandum made clear that this rationale was an alternative reason to the other two reasons; that is, that Plaintiff was not qualified in unarmed self-defense and that placement in a limited contact position would violate the pick-a-post agreement. All parties agree that the terms "non-contact" and "limited contact" refer to the same positions. Also, all parties agree that it is clear that Plaintiff was requesting certain positions that had very minimal contact with inmates. Nevertheless, regardless of the term used for the minimal contact positions, Plaintiff has not shown that she could be placed in one of those positions without violating the pick-a-post agreement.

Plaintiff argues that "ODRC has offered no facts to sustain the conclusory statement that the [Noble] Pick-a-Post Agreement prevented [Plaintiff] from obtaining one of the posts commonly identified as 'noncontact.' " (ECF No. 40 at 9.) Further, Plaintiff contends that:

> ODRC has not presented a single piece of particularized evidence showing that Lutz cannot obtain one of the posts for which she is physically qualified through one or more of [the available pick-a-post] methods. It is not enough for ODRC to make the unsubstantiated statement that it is blocked by the Pick-a-Post Agreement from assigning Lutz to a position.

*Id.* at 11. Plaintiff's argument misapprehends the nature of the inquiry at hand. That is, it is not

13

Defendants' burden to show that Plaintiff could not be placed in a limited contact position without violating the pick-a-post agreement. Defendant has the burden of producing a legitimate nondiscriminatory reason for the adverse employment action, which it did (*i.e.*, it would violate the pick-a-post agreement). The burden then shifts to Plaintiff to show by a preponderance of the evidence that Defendants' reason is a pretext for gender discrimination. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times on the plaintiff." *Burdine*, 450 U.S. at 253. Plaintiff has failed to offer any evidence to show that being placed into a limited contact position could be done without violating the pick-a-post agreement. Indeed, if Plaintiff possessed the requisite seniority, she could bid and be awarded a limited contact position without the need for accommodation. Therefore, Plaintiff has failed to raise an issue of material fact as to whether Defendants' reason for denying her request for a limited contact position was a pretext for gender discrimination. Consequently, the Court concludes that no reasonable jury could reject Defendants' explanation and infer that Defendants intentionally discriminated against Plaintiff because she is a woman.

### 4. Conclusion - Discrimination

Even when viewing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in her favor, the Court concludes that she has failed to raise any issue of material fact as to whether Defendants unlawfully discriminated against her.

## B. Retaliation

Plaintiff contends that Defendants retaliated against her for filing discrimination charges by terminating her employment at Noble.

### 1. Prima facie case of retaliation

To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to Defendant; (3) Defendant thereafter took adverse employment action against Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (modifying standard to provide for not only adverse action retaliation but also retaliatory harassment by a supervisor). The parties dispute only whether there was a causal connection between Plaintiff's filing of a discrimination charge and her disability separation.

> Plaintiff argues:
>
> Two of the strongest indicators of a causal link are timing and disparity of treatment. Lutz has shown that similarly situated male C.O.s were treated better than she ([Jackson Aff.]). As for timing, ODRC received notice of Lutz's charge of gender discrimination by late July 2010. ODRC disability separated Lutz in mid-September 2010.

(ECF No. 40 at 15-16.)

As the Court explained above, Plaintiff has failed to show that she was treated less favorably than any similarly situated coworker. Therefore, Plaintiff is left only with the temporal proximity between the protected activity and the alleged adverse action. Temporal proximity alone is usually not enough to show causation. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000); *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986). Unless immediate, temporal proximity must be "coupled with other indicia of retaliatory conduct" to give rise to a causal inference. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588-89,

595 (6th Cir. 2009). Here, the record is void of any other indicia of retaliatory conduct. Thus, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether there was a causal connection between her discrimination complaint and her separation from employment. Therefore, Plaintiff has not established a *prima facie* case of retaliation.

### 2. Legitimate nonretaliatory reason and pretext

Even if Plaintiff had established a *prima facie* case of retaliation, Defendants would still be entitled to summary judgment on that claim. This is because Defendants have provided evidence that they separated Plaintiff from her employment because she was medically unable to perform her job and there was no accommodation available to Plaintiff that would permit her to perform her job. As explained *supra*, Plaintiff has failed to meet her burden of raising an issue of fact as to whether Defendants' explanation for not accommodating her, and ultimately separating her from employment, was a pretext for unlawful discrimination. Plaintiff, for the same reasons, has failed to meet her burden of showing that Defendants' actions were a pretext for retaliation.

### 3. Conclusion - Retaliation

Even when viewing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in her favor, the Court concludes that no reasonable jury could find in her favor on her retaliation claim.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment.  (ECF No. 39.)  The Clerk is **DIRECTED** to **ENTER JUDGMENT** accordingly.

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**